UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| MELVIN CURTIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-291-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER DAVIS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

Federal inmate Melvin Curtis filed this civil rights action against federal officials pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"). Curtis alleges that he injured his rotator cuff while exercising, but that medical staff at USP-McCreary denied his repeated requests that a MRI be performed. [Record Nos. 1, 4] The defendants have now filed a motion to dismiss the Complaint or, in the alternative, for summary judgment. [Record No. 31] This motion has been fully briefed and is ripe for consideration.

I.

Curtis claims that he injured his right shoulder while exercising on December 13, 2014. He sought medical care at the health clinic that day. Nurse Phillips conducted a range-of-motion test that did not indicate any abnormalities, although Curtis grimaced during the examination. Phillips provided Curtis with a sling to support his arm, prescribed ibuprofen for the pain, and ordered an x-ray to rule out any severe injury. Three days later, Dr. Martillotti

-1-

reviewed the x-ray which was negative except for signs of mild calcification of the AC joint capsule. Dr. Onuoha also reviewed the x-ray the following day. During a follow-up appointment in late December, Advance Practice Registered Nurse Davis prescribed pain medication for Curtis and advised him to use heat and perform range-of-motion exercises to promote recovery. [Record No. 31-2 at 59, 61; No. 31-3 at 20-28; No. 31-4 at 2-3, 25-29]

In January 2015, Curtis sent several e-mails to medical staff complaining of shoulder pain and requesting that an MRI be performed. Staff responded that Curtis should discuss the matter during upcoming appointments that had already been scheduled. [Record No. 31-2 at 54-56] During an appointment on March 16, 2015, Curtis told nurse Davis that he had not been able to sleep well since the injury because of shoulder pain. Although Curtis did not appear to be in pain or suffering observable symptoms with respect to his shoulder, Davis submitted a request for Curtis to be evaluated by a contract orthopedist. That request was denied by the Utilization and Review Committee ("URC") two days later. Curtis reported that he was sleeping poorly again on March 30, 2015. He was transferred to the Federal Correctional Institution-Gilmer in West Virginia on April 8, 2015. [Record No. 31-2 at 62; No. 31-3 at 39-52]

Following his transfer to FCI-Gilmer, Curtis alleges that in late April 2015 a BOP physician concluded that a MRI should be conducted. That request was approved, but the MRI was not performed until November 2015. According to Curtis, in 2016 an outside orthopedic surgeon later evaluated the MRI and concluded that surgery on his rotator cuff was no longer a viable option.[1] [Record No. 1 at 5-7; No. 31-3 at 53-59]

---

[1] The medical care Curtis received following his transfer to FCI-Gilmer is not relevant to his *Bivens* claims arising out of his care at USP-McCreary. It is relevant to his *Bivens* claim arising

On July 9, 2015, three months after his transfer, Curtis filed grievance No. 827547 in which he complained that his prior request for a MRI when he was housed at USP-McCreary was denied by an unnamed medical director, nurse Jones, physician's assistant Davis, and Dr. Onuoha. That grievance was rejected as untimely. Curtis took no further steps to appeal the rejection or otherwise exhaust that grievance. [Record No. 31-2 at 3, 33-35] However, he initiated a second grievance, No. 832226, on July 26, 2015, complaining of the medical care he received at FCI-Gilmer. The warden denied this grievance on August 20, 2015. Again, Curtis did not appeal the denial. [Record No. 31-2 at 4, 36-39]

Curtis filed a third grievance (No. 838072) on October 6, 2015, regarding the delay by staff at FCI-Gilmer in performing an MRI of his shoulder. The warden denied the grievance. In his appeal to the regional office, Curtis complained for the first time in that grievance appeal that medical staff at USP-McCreary should not have denied his initial request for a MRI in January 2015. The regional office denied the appeal on December 24, 2015, noting that a MRI performed the month before was unremarkable, showing only mild degenerative changes and tenosynovitis. [See Record No. 31-2 at 63-64 ("There is no appreciable rotator cuff muscle atrophy or edema.").] Curtis's appeal to the Central Office again expanded upon his allegations, complaining for the first time in his appeal that since 2013 he had not received proper treatment for a separate injury, a torn tendon. The Central Office denied this appeal on February 23, 2016. [Record No. 31-2 at 5-7, 24-32]

---

out of care Curtis received at FCI-Gilmer, but the Court transferred that portion of his Complaint to West Virginia because the Court lacks personal jurisdiction over the individual defendants residing there. [Record No. 11 at 2-3] However, the Court retained jurisdiction over the entirety of Curtis's claim under the FTCA, *id*. at 4, which is based upon his medical care at both facilities. The medical care provided at FCI-Gilmer is recited solely for its relevance to that claim.

Curtis filed a Form SF-95, *Claim for Injury, Damage, or Death*, with the Bureau of Prisons on August 17, 2016. Curtis alleged in this claim form that staff at USP-McCreary misread his x-ray and refused his repeated requests for an MRI in January 2015. He further claimed that his medical care following his transfer to FCI-Gilmer was also deficient. The BOP denied this claim on December 7, 2016. [Record No. 31-2 at 9, 51-53, 70-72]

Curtis filed his Complaint on December 13, 2016, asserting that the defendants violated his Eighth Amendment rights by not performing a MRI of his shoulder shortly after his injury. Curtis filed a "supplemental" Complaint on January 17, 2017, to assert a claim under the FTCA. [Record Nos. 1, 4]

The defendants contend that Curtis's claims under *Bivens* are barred because: (a) he failed to properly exhaust his administrative remedies; (b) he filed suit after the statute of limitations had expired; (c) the named defendants were not personally involved in his medical care; and (d) Curtis's mere disagreement with the medical care provided to him does not constitute deliberate to his serious medical needs. They further contend that his FTCA claim must be dismissed because Curtis has not provided any expert testimony to support his contention that their conduct fell below the applicable standard of care. [Record No. 31-1]

**II.**

The Court must treat the defendants' motion to dismiss the plaintiff's Complaint as a motion for summary judgment under Rule 56 because they have attached and relied upon documents and declarations extrinsic to the pleadings. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that

claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

A party moving for summary judgment must establish that even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F. 3d 580, 588 (6th Cir. 2014). The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F. 3d 571, 575 (6th Cir. 2005). But if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to

meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F. 2d 1439, 1444 (6th Cir. 1993).

### A. Curtis Has Not Exhausted His *Bivens* Claim.

A prisoner seeking to file suit regarding any aspect of his confinement must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff, and then to institute a formal grievance with the warden within twenty days after the event complained of. 28 C.F.R. § 542.13, .14(a). If the prisoner is not satisfied with the warden's response, he or she must appeal to the appropriate regional office within twenty days, and if unsatisfied with that response, to the General Counsel within thirty days thereafter. 28 C.F.R. § 542.15(a). See BOP Program Statement 1300.16. Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...", *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), the prisoner must file the initial grievance and any appeals within these time frames. *Wright v. Morris*, 111 F.3d 414 (6th Cir. 1997).

Of the three grievances Curtis filed regarding the care provided for this injury, only the first and third relate to the care provided by staff at USP-McCreary. However, Curtis filed the first of those grievances on July 9, 2015, over three months after his transfer to FCI-Gilmer and six months after he first demanded that a MRI be taken of his shoulder. The BOP, therefore, properly rejected that grievance as untimely, and Curtis took no appeal from that

rejection. That grievance plainly failed to exhaust Curtis's administrative remedies. *Hartsfield v. Vigor*, 199 F.3d 305, 309 (6th Cir. 1999) ("...an inmate cannot simply fail to file a grievance or abandon the process before completion ...").

Curtis's third grievance related to medical care at FCI-Gilmer. In his appeal from the denial of that grievance, Curtis made a passing reference for the first time to his care at USP-McCreary. The BOP did not address those allegations, either because they were improperly raised for the first time on appeal, 28 C.F.R. § 542.15(b)(2) ("An inmate may not raise in an Appeal issues not raised in the lower level filings."), or because it appeared that Curtis was merely providing them as background for his claims regarding his more recent care at FCI-Gilmer. [Record No. 31-2 at 5-7, 24-32] In either event, Curtis failed to exhaust his administrative remedies with respect to his claims against staff at USP-McCreary through this grievance as well. *Bailey-El v. Federal Bureau of Prisons*, 246 F. App'x 105, 107-08 (10th Cir. 2007) (retaliatory transfer claim raised for the first time during appeal to regional office was not properly exhausted); *Valencia-Valencia v. Newman*, No. 5: 10-CT-3016-FL, 2011 WL 2173905, at *2-3 (E.D.N.C. June 2, 2011) (same); *Perotti v. Daniels*, No. 11-CV-3315-BNB, 2012 WL 1834492, at *4-5 (D. Colo. May 21, 2012) (same).

B. <u>Curtis's *Bivens* Claim Is Barred By The Applicable Statute of Limitations.</u>

Following his claimed injury, Curtis began requesting that medical staff perform a MRI as early as December 29, 2014. [Record No. 31-2 at 54 ("To PA Davis I need a MRI on my shoulder [I'm] still having a lot of pain...")] Curtis again complained of continuing pain in his shoulder during an appointment on March 16, 2015, three months after his injury. *Id.* at 62. Thus, Curtis's claims accrued no later than March 2015. *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015) ("Once the plaintiff knows he has been

hurt and who has inflicted the injury, the claim accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

Because the remedy afforded in a *Bivens* action is entirely judge-made, there is no statutory limitations period. Instead, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). The events about which Curtis now complains occurred in Kentucky. Therefore, Kentucky's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). Curtis was required to file suit no later than March 2016. And because he did not file suit until December 8, 2016, his claims are time-barred. *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001).

It is true that, before he could file suit, Curtis was required to exhaust his administrative remedies available under the BOP's Inmate Grievance Program. 42 U.S.C. § 1997e(a). If a claimant pursues such administrative remedies diligently and in good faith, the limitations period may be equitably tolled during that period. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). As noted above, however, Curtis's attempts at exhaustion were both untimely and aborted, and no equitable tolling is warranted. *Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002); *Santiago v. Snyder*, 211 F. App'x 478, 480 (7th Cir. 2007); *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period ... [but we] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

### C. Curtis's Allegations Are Insufficient To Establish A *Bivens* Claim.

An inmate must show two things to demonstrate a violation of the Eighth Amendment with respect to prison medical care: the deprivation of a sufficiently serious medical need (the objective component) and an official who acted with deliberate indifference to that need (the subjective component). *Farmer v. Brennan*, 511 U.S. 825, 834 (1970); *Phillips v. Roane Co., Tenn.*, 534 F. 3d 531, 539-40 (6th Cir. 2008). The defendants do not contest that Curtis's claimed injury was sufficiently serious to implicate the Eighth Amendment. The remaining question is whether there is legally sufficient evidence to support a conclusion that the treatment they provided for it demonstrates their deliberate indifference to Curtis's health. The Court agrees that such evidence is missing here.

The medical records provided establish that the defendants provided consistent, if conservative, treatment for Curtis's claimed injury over an extended period of time. [Record No. 31-3 at 3-5, 15-59] Where a prisoner receives treatment but merely disagrees with its efficacy, the inmate's claim generally sounds in state tort law rather than under the Constitution. *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013); *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment."); *Sharpe v. Patton*, No. 08-CV-58-HRW, 2010 WL 227702, at *10 (E.D. Ky. Jan. 19, 2010) ("Differences of opinion as to matters of medical judgment, negligent treatment or even medical malpractice are insufficient to state a claim under 1983.").

A prison doctor cannot avoid liability under the Eighth Amendment merely by providing medical treatment that is obviously ineffective:

> ... blatant disregard for medical standards could support a finding of mere medical malpractice, or it could rise to the level of deliberate indifference, depending on the circumstances. And that is the question we are faced with today - how bad does an inmate's care have to be to create a reasonable inference that a doctor did not just slip up, but was aware of, and disregarded, a substantial risk of harm? ... If a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it.

*Petties v. Carter*, 836 F. 3d 722, 728-29 (7th Cir. 2016) (*en banc*). But the facts plainly indicate that such was not the case regarding Curtis.

An x-ray taken only a few days after the injury indicated no abnormalities and only mild calcification of the AC joint capsule. [Record No. 31-3 at 23] Curtis complained of pain during several examinations in 2015, but medical staff did not find any objectively observable symptoms to support those assertions and range-of-motion tests were normal. Finally, a MRI performed in November 2015 showed "no appreciable rotator cuff muscle atrophy or edema." [Record No. 31-2 at 63-64] Because there is no evidence to support a jury finding that medical staff intentionally provided medical care that they knew to be insufficient, summary judgment is warranted. *Anderson*, 477 U.S. at 251.

D. <u>Curtis's Claim Of Medical Negligence Fails Under The FTCA.</u>

The FTCA constitutes a limited waiver of the sovereign immunity for claims based upon "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b); *Matthews v. Robinson*, 52 F. App'x 808 (6th Cir. 2002). The law of the

state where the relevant conduct occurred determines the existence and scope of its liability. *Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957). In this case, Curtis contends that the medical care he received from health care professionals employed the United States fell below the applicable standard of care in Kentucky and West Virginia.

Because Curtis alleges that the medical care he received at the prison fell below the applicable standard of care, the Court looks to state negligence law to determine whether he has presented the essential components of his claim. The common law of both Kentucky and West Virginia require that a plaintiff prove the given treatment fell below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused the plaintiff's injury or death. *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982); *Hundley v. Martinez*, 158 S.E.2d 159 (W.Va. 1967).

Negligence is never presumed "from the mere evidence of mental pain and suffering of the patient, or from failure to cure, or poor or bad results, or because of the appearance of infection." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006). Instead, "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Id*. (citing *Turner v. Reynolds*, 559 S.W.2d 740, 741-42 (Ky. App. 1977)); *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2012) ("[A] plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury."). West Virginia law is to like effect. *Banfi v. Am. Hosp. for Rehab.*, 529 S.E.2d 600, 605 (W.Va. 2000) ("In medical malpractice cases[,] negligence or want of professional skill can be proved only by expert witnesses.")

West Virginia law requires a plaintiff seeking to assert a claim of medical malpractice to file certificate of merit completed by an appropriate expert pursuant to W. Va. Code § 55-7B-6 (2016). *Russell v. United States*, 670 F. App'x 116 (4th Cir. 2016). Kentucky permits a plaintiff to provide evidence of the applicable standard of care from expert opinion, defendant's admissions during discovery, or medical evidence obtained from other treating physicians. *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992)).

Here, Curtis has not provided obtained a certificate of merit or provided any expert testimony to support his claim that the medical care given by the defendants fell below the applicable standard of care and caused his injuries. He therefore has failed to establish a prima facie case of medical negligence under the law of either state. *O'Neil v. United States*, No. 5:07-CV-358, 2008 WL 906470, at *2-4 (S.D. W.Va. Mar. 31, 2008); *Matthews*, 52 F. App'x at 810; *Andrew*, 203 S.W.3d at 170; see also *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) ("It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony.").

### III.

For the reasons outlined above, the defendants are entitled to the dismissal of the plaintiff's claims. Accordingly, it is hereby

**ORDERED** as follows:

1. The Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Record No. 31] is **GRANTED**.

2. Curtis's original and supplemental Complaints [Record Nos. 1, 4] are **DISMISSED** with prejudice.

3. Inmate Sean Clemmons's motion to continue to represent Curtis "pro se" [Record No. 35] is **DENIED**.

4. This action is **DISMISSED** and **STRICKEN** from the docket.

5. The Court will enter a corresponding Judgment this date.

This 6th day of December, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge